IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROGER BEAUDOIN; ACCESS NOW, INC., a not-for-profit corporation; and R. DAVID NEW, <br><br> Plaintiffs, <br><br> v. <br><br> MENARD, INC., <br><br> Defendant. | Case No. <br><br> Filed Electronically |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Access Now, Inc., R. David New, and Roger Beaudoin (collectively, "Plaintiffs") seek a permanent injunction requiring a change in Menard, Inc.'s ("Defendant" or the "Company") corporate polices to cause Defendant's website to become, and remain, accessible. In support thereof, Plaintiffs assert as follows:

**INTRODUCTION**

1. Plaintiffs bring this action against Defendant and assert that its website is not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiffs seek a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's Website (defined herein) will become, and will remain, accessible. The Website at issue is the following: www.menards.com (the "Website").

2. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital

technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

3. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content. Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access its many pages.

4. Plaintiffs have attempted to patronize Defendant's Website in the past, and will attempt again in the future in order to utilize all of the services Defendant offers and to ensure the Website's compliance with the ADA. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiffs will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website.

5. The ADA expressly contemplates the type of injunctive relief that Plaintiffs seek in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

6. Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

    a) that Defendant retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of

its Website so it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b) that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c) that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d) that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and,

e) that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

8. Plaintiff Beaudoin's claims asserted herein arose in this judicial district.

9. Defendant purposefully targets and otherwise solicits business from New Hampshire residents through its Website. Because of this targeting, it is not unusual for Defendant to conduct business with New Hampshire residents. In fact, the opposite is true: Defendant derives

---

[1] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

substantial revenue from transactions in New Hampshire, having more than a slight effect on the state's commerce as a result.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

11. Plaintiff Beaudoin is and, at all times relevant hereto, has been a resident of New Hampshire. Plaintiff Beaudoin is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

12. Plaintiff Access Now, Inc. ("ANI") is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff ANI has members representing 47 states, including residents of the state of New Hampshire. ANI is engaged in seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act. One of ANI's primary purposes is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations. ANI members continue to be discriminated against by Defendant's lack of compliance.

13. Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Plaintiff ANI.

14. Defendant Menard, Inc. is a Wisconsin corporation with its principal place of business located in Eau Claire, Wisconsin. Defendant's Website offers a complete selection of high-quality, name brand merchandise, tools, materials and supplies for all home improvement needs. Defendant's Website also offers pet products, lawn and garden supplies, and groceries, all of which are available for online purchase and home delivery. Defendant's Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND

15. The internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, education, and entertainment for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

16. Individuals with vision related disabilities may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a blind person may independently use the internet. Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the sites.

17. Defendant is a leading online retailer of home improvement tools and other merchandise. In addition to purchasing goods directly from Defendant's Website, consumers can

5

apply for credit, create gift registries, purchase gift cards, sign up to receive exclusive offers and money-saving emails, and locate Defendant's physical locations.

18. Plaintiffs are permanently blind and use screen reader software in order to access the internet and read website content.

19. Plaintiffs have visited the Website and have been denied the full use and enjoyment of the facilities, goods, and services available on the Website as a result of access barriers.

20. The Website's barriers have previously denied Plaintiffs full and equal access to all of the services Defendant's Website offers, and now deter Plaintiffs from attempting to use Defendant's Website in the future.

21. Despite their permanent disabilities, Plaintiffs are able and ready to visit Defendant's Website once it is made compliant. Plaintiffs' disabilities, and the challenges Plaintiffs face in physically traveling to and shopping in traditional brick-and-mortar retailers as a result of them, make it particularly likely that Plaintiffs will return to Defendant's Website in the future to purchase Defendant's goods from the comfort of their homes.

22. As a result of having visited Defendant's Website in the past, and of investigations performed on Plaintiffs' behalf, Plaintiffs are aware that Defendant's Website includes at least the following access barriers:

   a) A text equivalent for every non-text element is not provided;

   b) Alternatives that present information in a way that sight or hearing impaired visitors can use is not provided for audio-only or video-only pre-recorded media presentations;

   c) Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

d) On pages where a user can move to a part of a page via the keyboard, the user is unable to move away from that part of the page using only the keyboard;

e) If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

f) A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

g) Web pages lack titles that describe their topic or purpose;

h) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

i) The default human language of each Web page cannot be programmatically determined;

j) Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

k) Labels or instructions are not always provided when content requires user input;

l) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

23. If the Website were accessible, *i.e.* if Defendant removed these barriers, Plaintiffs could independently shop for and research products via Defendant's Website.

24. Though Defendant has centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

25. The law requires that Defendant's Website be accessible to Plaintiffs and others with visual disabilities. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

26. Removal of these barriers would make Defendant's Website accessible to Plaintiffs and to 3.4 million[2] blind Americans, allowing them to independently shop for and research products via Defendant's Website.

27. Plaintiffs' above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), and numerous federal courts, all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited February 27, 2017).

28. The Department of Justice utilizes the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). *See, e.g.*, Nondiscrimination on the Basis of Disability, Accessibility of Web Information and Services of

---

[2] "More than 3.4 million (3%) Americans aged 40 years and older are either legally blind (having visual acuity [VA] of 20/200 or worse or a visual field of less than 20 degrees) or are visually impaired (having VA of 20/40 or less) (Eye Diseases Prevalence Research Group, 2004)." Centers for Disease Control and Prevention, "The Burden of Vision Loss." https://www.cdc.gov/visionhealth/basic_information/vision_loss_burden.htm (last accessed 02/24/2017)

State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460, 43465 (July 26, 2010) (stating that WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility").

29. The Department of Transportation adopted a Final Rule on November 12, 2013 requiring U.S. and foreign air carriers to conform their websites' public-facing pages to the WCAG 2.0 AA standards by December 12, 2016.

30. The Access Board published a Final Rule on January 18, 2017 requiring all websites and electronic content of federal agencies to conform to the WCAG 2.0 AA standards within one year.

31. Without the injunctive relief sought herein, Plaintiffs and other individuals with vision related disabilities will continue to be unable to independently use the Website in violation of their rights under the ADA.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)**

32. The allegations contained in the previous paragraphs are incorporated by reference.

33. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

34. Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Indeed, the District of Massachusetts helped explain "that Title III covers entities providing exclusively web-based services to the public. Judge Ponsor explained that the ADA covers not only transactions taking place over the phone or through correspondence

9

but also 'applies with equal force to services purchased over the Internet.'" *Natl. Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 571 (D. Vt. 2015) (*quoting Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F.Supp.2d 196, 200 (D.Mass. 2012).

35. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

36. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

37. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

38. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

39. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiffs, who are blind and have disabilities that substantially limit the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), have been denied full and equal access to the Website. Plaintiffs have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

40. Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

41. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in Paragraph 6 above;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: April 6, 2017April 6, 2017April 6, 2017

Respectfully Submitted,

/s/ Jason R.L. Major
Jason R.L. Major (NH Bar No. 14782)
Backus, Meyer & Branch, LLP
116 Lowell Street
Manchester, NH 03104
(603) 668-7272
jmajor@backusmeyer.com

Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
*Pro Hac Vice* admission to be sought
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com
*Pro Hac Vice* admission to be sought
CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243

*Counsel for Plaintiffs Roger Beaudoin, Access Now, Inc., and R. David New*